May it please the Court. My name is Patricia Peterman. I represent American Medical Response, and for purposes of this motion, I will refer to them as AMR. Your Honor, AMR comes before the Court today and asks this Court to reverse the District Court for a number of reasons. The first is because the District Court lacks subject matter jurisdiction. The second is that the punitive damages in this case do not meet the guideposts of State Farm v. Campbell and BMW v. Gore and are unconstitutional. And the last is we ask the Court to set aside the default judgment and have this case be tried on the merits. Considering the amount of time I have, I'd like you to address the arguments. If you would be kind enough to do that. Just speaking for myself, I find it difficult to figure out when a dollar amount is too high or not high enough or whatever. But in the context of the default, all the facts alleged are taken as true. So there's reprehensible behavior. That's a given. And so why is the amount too high given the level of malice described in the complaint? Your Honor, I agree with you that when a default is taken, the facts are as true with the exception of damages and with the exception of legal conclusions. A legal conclusion that is reprehensible has to be based on the facts. I'm asking you to assume the truth of the facts and that they do support some amount of punitive damages. Why is the amount too high? Your Honor, in State Farm v. Campbell, the U.S. Supreme Court stated that punitive damages are akin to criminal penalties. And, in fact, they listed they relied on BMW v. Gore for the three guideposts that the district courts should apply in a punitive damage case. The first guidepost, which they described as the most important, was reprehensibility. And they listed five factors. The first factor was what was found to be reprehensible conduct, as Judge Graber has pointed out, by the default nature of the judgment. You said that reprehensibility has to be made on the facts. But your client prevented that by defaulting. So, I mean, aren't you a little stopped to do that? Your Honor ---- I mean, is there any proceeding by which a defaulting, I mean, a plaintiff in default can bring on facts to show reprehensibility? I mean, sure, you can call a witness on a prove-up hearing and say, was this reprehensible? There's no one else in the courtroom. Yes, it was. It was terribly reprehensible. Proven. What else do you want? There has to be facts in the record to support the reprehensibility finding. The record is a complaint, and the complaint says this is horrible conduct. But the complaint does not ---- And it defaulted. And there was $100,000 worth of damage to the plaintiff. That's what the plaintiff testified to, that there was $100,000 worth. But that's what the court awarded. But the facts don't support that. And, in fact, it ---- Well, I'd like you to assume, when dealing with the punitive damages claim, and not fight all the predicates, because it doesn't help my problem, which is I find it difficult to apply the Supreme Court's guidance as to how much is too much, because they declined to give us a specific ratio. If they would do that, it would be easy with a calculator. But here we have a 6-1⁄2 to 1, approximately. Why is that too much? Your Honor, when you look at the five guideposts under the reprehensibility, they look at whether it's a physical damage versus an economic damage. And this is an emotional damage, which is somewhere in between, or not either of those. Well, I ---- Okay. But it isn't. It's an economic. My client sent a bill to the wrong address. That's an economic ---- a contract issue. It wasn't one bill, though. Well, there may have been four. As I look at the record, there were four. But at least it's not physical. We know that ---- Right. Certainly sending a bill to the wrong address is not the kind of thing that we want anybody to do. But it certainly doesn't, in the second guideline, it's not reckless disregard for the safety or health of others. It's just a mistake. And in our society, when we have computers do everything, billions of bills go out every single day. It's something that, unfortunately, in this case, happened. You're still arguing liability, really. Yeah. Well, and I don't mean to say that my client wasn't negligent by sending the bill to the wrong place. But the question is, does that act fit the punishment of $650 in punitive damages? And under the guideposts of State Farm and BMW, it simply does not. Under the third reprehensibility guidepost, it talks about whether Mr. Bennett was targeted. Mr. Bennett was not targeted, and he certainly was not financially vulnerable. On the fourth one, the only evidence before the Court was this was an isolated incident. There was no evidence by the plaintiff to suggest that this was something that was recurring over and over again. The last one is certainly the harm was not intentional. It was not a result of trickery. It was a mistake. My client sent the bill to the wrong address. Under the second big BMW guidepost, the ratio of harm to punitives has to be looked at. And State Farm does provide guidance here. In State Farm, the actions of State Farm Insurance were egregious. They ignored their adjusters. They sent these people to trial on a case where they should have settled for the policy limits. They then told them to put their house on the market to pay for the excess judgment. They were egregious acts. And yet the Supreme Court, the U.S. Supreme Court, said even in that case, the most that we could support would be a one-to-one punitive damage because, in that case, the plaintiffs got $1 million in emotional distress damages. They said when you get $1 million, the significant amount of compensatory damages included in that are the punitive damages because emotional distress often does have a punitive element. And Mr. Bennett, in his brief, conceded that he considered $87,000 of the settlement with Bay Area Credit to be punitive damages. So under State Farm's analysis, in a case where the facts are much more egregious than in this case, the U.S. Supreme Court said a one-to-one ratio is all that we could possibly sanction. And if that's all they can sanction in State Farm, then certainly a 6.5-to-1 ratio is exceptionally high in this case and doesn't pass constitutional muster. What role does the wealth of the defendant play? It's a large company, billion, et cetera. Well, in State Farm, they addressed that also. And they stated that, you know, just because somebody has a lot of money doesn't mean we necessarily impose significant punitive damages against that. That is not a factor to be considered by this Court. The third factor we have to figure out how much money American medical response and Laidlaw have in order to know whether any punitive damage will teach them a lesson. Is that part of it? Well, there was no. The evidence before the Court was information that was gotten off the Internet. Well, regardless of where they got it, it's in the record, right? The information off the Internet is in the record, correct. So you're saying we should give American medical response the same sort of punitive damages we might give a hot dog seller? Well, I think that is relevant, Your Honor. But in the State Farm case, State Farm is a much more wealthy company than my client, American Medical Response. And in that case, the U.S. Supreme Court said a 1-to-1 ratio is as much as we could countenance in that case. A million dollars against State Farm. Would you stipulate to that against your company? No, I will not. But in that case, the compensatory were a million dollars. In our case, the compensatory against AMR were $100,000. A 1-to-1 ratio at best would be at the limits of a constitutional challenge. But in addition, in State Farm, the claims ---- The Supreme Court didn't impose that. They said in that particular case they thought that a 1-to-1 would be. Well, and I think it provides guidance. They raised eyebrows about anything that exceeded a single-digit ratio. Correct. But in State Farm, they did say 1-to-1 ratio in that case. In that case. Right. And I think ---- Now, this judge here, the district court judge here, based on the allegations in the complaint and the extra stuff, the extra declarations that were filed at the time, he's fixed the amount of damages and the punitive damages award. In his best estimate, in his judgment, he thought that the 6.5 was. Now, what do we do with his? Would he just disregard it? I know we reviewed de novo, but does it help? Should it inform our decision? He thought it was pretty serious. Your Honor, I think this is a de novo review. And the other ---- Well, that doesn't mean we just cast it away. I think he said. Well, the U.S. Supreme Court has, you know, come down with significant guidelines because they consider punitives to be akin to criminal penalties. And in State Farm, the claims that were brought were bad faith, fraud, and intentional infliction of emotional distress. Those were the three claims in State Farm. In this case, we have a claim under the Fair Debt Collection Practices Act, which we have argued does not apply to our client, and a claim for negligence. There was no intentional tort in this case brought. Well, there was an allegation in the complaint in order to get punitive damages under Montana law, there had to be actual malice. Correct. And they found actual malice here. Well, I ---- The district court judge could not have awarded punitive damages under the Fair Debt Collection Practices Act. The district court ---- It had to be based on Montana law. Correct. And under Montana law, it was error. Well, under Montana law, it was error for him to find actual malice in a negligence case. I have cited a case in my brief in which something more must be pled and proven than negligence to find for punitive damages. Well, I think you intentionally looked at the intentional conduct here. You just dismiss it, well, it was just a computer glitch, a computer mistake. That's not what the record really shows here. Your Honor, in the punitive conduct allegations in the complaint, in paragraphs 39 through 42 of the complaint, they talk about improper business practices and erroneous debt collection. My client is not a debt collector under the Act. It just is ---- there's no jurisdiction under the Fair Debt Collection Practices Act for my client. And so the allegations in the complaint regarding punitives don't apply to my client. My client, at best, has a negligence case. And the Montana Supreme Court has stated negligence is not enough. Not every case is entitled to have a punitive damage award. Counsel, you've well exceeded your time, and we all understand your position. Thank you. Ms. Bennett. Good afternoon. I've never been accused of not being able to be heard, so you probably can hear me without the microphone, but let me know if you can. Ms. Bennett, let me ask you a question. Do we have jurisdiction in this case? You haven't pleaded $75,000 as an amount in controversy in your pleadings. I think the Court has sua sponte authority to consider its jurisdiction at any time. The Court below decided that it had jurisdiction to determine its own jurisdiction, and neither AMR nor Mr. Bennett disputed that before the Court. So the Court ---- Well, the parties can't very well impose jurisdiction or even agree to jurisdiction. The diversity statute says that you cannot invoke a diversity jurisdiction of a federal court unless you plead a $75,000 amount in controversy. Now, it may well be that in Montana, like in California, in a personal injury case, you're not allowed to plead an amount in controversy, and you have to do that by some supplemental pleading at a certain point. But can we even consider your claim? Yes, under Federal Deposit Insurance Corp. v. Nichols, this Court has said that when examining its own jurisdiction, the Court is not limited to the complaint. It can look to half the data. And we just have jurisdiction under 1331. It rises under a federal statute, right? Pardon? Don't you have a claim based on the fair credit, fair debt? The Federal Fair Debt Collection Practices Act? Yes, in one form. In that 1331 jurisdiction? Right. And the district court. Right. Can you get jurisdiction? Yeah. The district court specifically found that there was the AMR was within the third debt collector category, that is, operating as AMR collecting for a laid law. Right. Why isn't that the beginning and the end of the jurisdictional analysis? Well, I certainly think that's examined under the Cluralius-Veronius Act, whether to rely on Orenboek v. North Shore, whether that was for Federal jurisdiction. But I think what's important, the Court found all three jurisdictions. And although AMR put forth the standard of review for supplemental jurisdiction and mentioned it in its summary of argument, it presented no brief. So that issue is not properly before the Court. Let me ask you another question. In the conclusions of law that the judge found at page ER 54 and 57, concludes laid laws negligence caused Bennett extreme emotional distress, frustration, and anger in the amount of $100,000. And that amount is awarded to Bennett. There was no conclusion of law that laid law was malicious as to Bennett, but only negligent as to Bennett. Doesn't that conflict with findings of fact earlier on that there were malicious words? The Court not only found that AMR had actual malice as defined by Montana Code 27-1, 221. The Court, in its findings of fact, found their conduct to be abhorrent and reprehensible, which are part of the findings of fact as to AMR, but not as to laid law. Laid law was only negligent, but AMR was malicious. Laid law is a wholly owned subsidiary of AMR. At the time, obviously, because AMR had never appeared or defended after two years, we didn't know what the relationship was. So laid law is only responsible vicariously for AMR. Right. AMR would be the actual defendant. Okay. Now you've cleared that up. Thank you very much. And I would have to disagree with Ms. Peterman's characterization. I think this Court has addressed punitive damages, and I can't find it right now, but it's Bain v. Well, let me just ask you the same question I asked opposing counsel. We're faced with a dollar amount of punitive damages and a claim that it's excessive. How do we know whether it's too much or not? And the second part of my question is, if we were to conclude that it is too much, should we set an amount or should we remand it to the district court for reconsideration? Well, I don't think it's too much, and I don't think it's too much under this circuit's law or the United States Supreme Court. The standard was a single digit. State Farm, in that case, they got a million dollars compensatory, and the U.S. Supreme Court said, well, you know, we need to pull back that $145 million. Well, $100,000 is a lot for not being able to sleep and being frustrated and angry. And now you have his credibility. Why isn't that why isn't a one-to-one ratio sufficient to recognize the maliciousness, et cetera? I think if AMR wanted to dispute the amount or to present evidence otherwise, it had over two and a half years. We went to every possible means to invite them to participate in this lawsuit. No, this isn't about whether they defaulted. We're assuming for the purpose of this question that the default was okay, that jurisdiction was okay, that the compensatory damages are okay, and that some amount of punitive damages are okay. But it seems like such an amorphous exercise to say how many dollars. Well, in Dane, the court held that $50,000 warranted an award between they remanded for an award between $300,000 and $450,000. And in this case, you have $100,000, which would, therefore, if you follow Dane, be between $600,000. How did you arrive? When I read the brief that you filed in support of the dollar judgment, you suggested the 6.5. Right. How did you arrive at that number? I mean, I looked to try to figure out what you sort of factored into. I looked at their treatment of him for over two and a half years. It was at a very stressful point in his life. It got to the point where he lost his hair. He went to Mayo Clinic. He said, why am I losing my hair? The doctor said it's either your thyroid, your teeth, or stress. He had his thyroid checked. He had his teeth checked. The only remaining thing is stress. And this is a man who has spent his entire life building an impeccable credit rating. He has never bounced a check. He has never been late on a MasterCard bill. He has never not paid a bill. And that's been restored to him, though, at this point. Actually, it hasn't. I am still fighting trying to get the three major credit reporting agencies to take this off of his account. I mean, dealing with the three major reporting agencies, trust me, is a whole new ball of wax. They've got their whole private rules. You can't subpoena their records. So, no, it isn't over. He continues to try and clear up his record. I mean, it was just – and it isn't a case of sending one bill on one occasion. They sent multiple bills on multiple occasions for multiple amounts, and then they hired an agent, Bay Area Credit, to start sending him bills, and they sent him 14 or 15 bills for amounts from $65 to over $3,000. I mean, none of it was coherent. Ms. Bennett, you will admit that the folks in the Campbells, in State Farm, had a much greater source for emotional distress than your father. Yes. And yet the Supreme Court said one-to-one was the right ratio. Why should we go higher than one-to-one? Because I would think because they had a million in compensatory to demonstrate for their – Okay. the pain and suffering that they incurred. And I think Mr. Bennett's award of $100,000 is much less than that and much more justified to support an award above one-to-one. In the Exxon Valdez case that we just did, and I know that's significantly different, but we used a five-to-one ratio, the panel, in that case. And I would submit five-to-one to six-to-one, you know, as – In Planned Parenthood versus American Coalition of Life Activists, where there was significant economic damages, we used a four-to-one ratio. Okay. I have been unable to find any case in the case – In the case of Zhang, Zhang, Zhang, Zhang, Z-H-A-N-G, versus American Gem Foods, Seafoods, we used a – we approved a seven-to-one ratio. Now, you know, I – The award strikes me here, 6.5, strikes me probably on the upper end. I would agree that it's probably on the upper end, but I still think it's supportable by the law and appropriate under these circumstances. This is a multimillion-dollar company who ignored the judicial process for over two-and-a-half years while simultaneously sending bills to Mr. Bennett, and now they report they can't even find a file on him, so there's no way to try this case because we have no – Exhibit A is missing their file, everything they told Bay Area, everything they told the credit reporting agency. And I would submit that a six-to-one is appropriate for a corporation under Montana law where you consider net worth, that has a net worth of $150 million, and a billion dollars in revenue, this isn't even a slap on the wrist for what they put Mr. Bennett through. Thank you, Your Honors. Thank you, Counsel. We have allowed Ms. Bennett to go over her time, so you may have 45 or whatever is remaining for your rebuttal time. Whoops, not 10 minutes. No. Thank you, Judge. I do want to address the Baines v. Arco case. That was an intentional discrimination case. It was a case of some Indian Sikhs who had a business up in Seattle who were treated abhorrently. And this Court has always said, the Ninth Circuit has always said, when it comes to intentional discrimination, we will look seriously at punitive damages. Well, the cases that Judge Pinus was citing, we have variously approved seven-to-one, five-to-one, four-to-one, and it's different every time, which is one of the difficulties I personally have. But why isn't that sort of ratio appropriate here? Your Honor, Mr. Bennett himself and Ms. Bennett, his attorney, have stated, I think I had $101,000 in emotional distress damages. They made that determination as to how much they felt, and they made it high. Mr. Bennett, in his testimony before the Court, even before I provided his deposition, said he, a few months ago, had lost a couple nights' sleep and took some Excedrin PM. He said he was frustrated and angry. There is no evidence in this case, even on the record before this Court, that he suffered severe emotional distress damages comparable to the Campbells and State Farm. The Campbells and State Farm. He lost a hair. There is no medical evidence that the loss of hair was caused. It could be. He testified during the default hearing. There was nobody there to cross-examine him. There was no default hearing. This was simply. . . Well, I mean, on his papers. He said that, in part, he was under a great deal of stress apart from this case, and the judge found that the stress was causing his hair to fall out. There was no indication as to whether the fact that he had been reported to a credit reporting agency was the cause of his stress or other factors. And, you know, we didn't report him to a credit reporting agency. Counsel, you're well over your time. I apologize. I would ask this Court to reverse and send this back for a trial on the merits. Thank you. Thank you. The case just started.
judges: Graber, Paez, Bea